## Herndon v. Smith.

(Decided October 13, 1925.)

### Appeal from Franklin Circuit Court.

Boundaries—Islands in Creek West of Main Channel Held to Lie Within Boundaries of Owner of Land Lying on West Side of Creek.—Where title papers, which constituted chain of title of both claimants to islands lying in a creek, showed that line dividing their two tracts ran with the main creek, and testimony showed that eastern channel of such creek was the main channel, and that islands lay to the west of the main channel, held that islands were within boundaries of owner of land lying on west side of the creek and excluded from that of owner lying on the east side.

MORRIS & JONES for appellant.

LESLIE W. MORRIS for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

There are in controversy in this equitable action two small islands situated in Benson creek in Franklin county, Kentucky. Appellant instituted the action, and, as the issues were made by the pleadings, both he and appellee claim the lands in dispute and by adverse possession. The chancellor adjudged that appellant had not manifested his right to recover herein and dismissed the petition. Appellee was adjudged to be the owner of the lands in dispute, hence this appeal.

Both the parties trace their title to a common remote grantor, one Elisha Herndon. Appellant contends that by his last will and testament Elisha Herndon devised the lands in dispute as part of a larger tract of land to his

son, David J. Herndon; that David J. Herndon conveyed
to Alexander Julian; that Julian conveyed to W. A.
Powers and Robert Anderson; that Powers and Ander-
son made division under which the lands in dispute were
conveyed to Robert Anderson; that Robert Anderson
conveyed to Collins Wright, and that he (appellant) ac-
quired title by deed from the commissioner of the Frank-
lin circuit court, who conveyed to him the Collins Wright
tract of land.

Appellee insists that Elisha Herndon conveyed a
tract of land to R. E. Collins, which included the lands
in dispute herein, and that Collins conveyed the same
to J. H. Shouse, and that Shouse conveyed the same to
Solomon Bright, and that Solomon Bright conveyed the
same to Henry Smith, and that Henry Smith conveyed
the same to appelee.

The various deeds and wills constituting the chain
of title of appellant and appellee are in the record. The
controversy is as to whether, as is contended by appel-
lant, the lands in controversy herein passed under the
will of Elisha Herndon to David J. Herndon, and thence
by mesne conveyance to appellant; or, as is contended by
appellee, by deed from Elisha Herndon to R. E. Collins
and thence by mesne conveyances to appellee.   Benson
creek at the point in controversy flows approximately
from south to north.   The lands of appellant Herndon
lie east of the creek, while those of appellee lie west
thereof.   The creek as it passes through the lands of ap-
pellant and appellee spreads out somewhat like the delta
of a river, and the islands in controversy are formed by
the main channel of the creek on the one side and the
several lesser channels on the other.   The testimony es-
tablishes—and there is no evidence to the contrary—
that the main channel of Benson creek is to the east and
on the side next to the lands of appellant Herndon.   The
controversy as to the location of the line between the
lands owned by appellant and appellee, respectively,
seems to have grown out of the rather vague descrip-
tions contained in some of the earlier title papers.   The
will of Elisha Herndon, under which appellant claims,
devised to David J. Herndon "all the balance of my land
which lies between the 120 acres (heretofore given to my
son, John Ezra) and main Benson creek, which will be I
think about 143 acres, including all the land subject
to inundation on the creek in the estimate, be the same
more or less."   David J. Herndon conveyed that tract

of land to Alexander Julian by the following description:

> "On the south by the lands of John Ezra Herndon, deceased, and the lands of Mrs. Susan Herndon, and on the northwest by main Benson creek, and on the north by the lands of Mrs. Amanda Morrison and Rich Kirk, deceased, and containing one hundred and sixty-eight acres, be the same more or less, and being the whole of the tract of land which was devised to said David J. Herndon by his father, Elisha Herndon, deceased, in his last will and testament and which is described in said will as containing by estimate one hundred and forty-three acres of land, but which on a survey of the same made by Henry Bohanan, by order of the executor of said Elisha Herndon, held out one hundred and sixty-eight acres, and which survey is hereby referred to for a more accurate description of the boundary of said tract of land together with the rights, privileges and appurtenances thereunto belonging."

The deed from Alexander Julian to W. A. Powers described the land exactly as did that from Herndon to him. Bearing in mind that it was the lands lying between the 120 acre tract willed to John Ezra and main Benson creek that Elisha Herndon devised to David J. Herndon, and that as conveyed by David J. Herndon to Alexander Julian and by Julian to W. A. Powers and Robert Anderson, the tract of land was said to be bounded on the northwest by main Benson creek, and the further fact established by the evidence herein that the main channel of Benson creek lies to the east of the islands in controversy, it would seem that no construction that we might put upon the Elisha Herndon will and the deeds above mentioned would authorize the inclusion of the islands in controversy within the land devised by it and conveyed by them.

On the other hand, the deed by which a tract of land was conveyed from Elisha Herndon to R. E. Collins describing the boundary of that land as it lay with reference to Benson creek reads: "Thence south 67½ east 220 poles to an elm and small sycamore on the west bank of main Benson creek; thence down the same north 70¼ east 12½ poles north 15¼ east 78 poles to the beginning." The same description exactly is contained in the

deed from R. E. Collins to J. H. Shouse, and from J. H. Shouse to Solomon Bright. Solomon Bright conveyed to Henry Smith only a portion of the lands conveyed to him by Shouse, and the tract so conveyed was described in the deed as it ran with reference to Benson creek as follows: "Thence down the branch and with Cardwell's line to the edge of Benson creek, north side of the creek to Henry Smith's line; thence with Smith's line leaving the creek to William Anderson's line." Henry Smith in turn conveyed to appellee, Robert Smith, a portion of the land he had purchased from Solomon Bright, and the description of the tract so conveyed as it lay with reference to Benson creek reads as follows: "Thence north 13 east 8 poles to an elm on the northwest side of main Benson creek and down the same north 9 east 84 poles to a hickory, corner to Henry Smith on the northwest bank of the creek." Bearing in mind the fact that each one of the deeds in the chain of title under which appellee Robert Smith claims the lands in controversy calls for and to run with main Benson creek, as reference to the descriptions above will show, and the further fact that all of the testimony herein discloses that the eastern channel of Benson creek is the main channel of the creek, and that the islands in controversy lie to the west of the main channel of the creek, it seems to the court conclusive evidence is found that the islands in dispute are included as a part of the lands described in the title papers constituting appellee's chain of title. Thus conclusive proof that the chancellor properly dismissed appellant's petition and awarded appellee a judgment for the lands in dispute herein seems to be afforded.

Appellant and appellee agree as to the location of the hickory corner to which their lines run as they run down Benson creek. As given by the description in appellee's deed, the line running to the hickory corner runs north 9 east 84 poles. That line runs from an elm recited to stand on the northwest side of main Benson creek. The testimony of appellant's surveyor establishes that an elm is now standing on the bank of the main creek from which a line run north 9 east 70 poles will strike the hickory corner agreed upon by both parties as their common corner. However, a line run on the course given will not run with the creek. He testified that to accord with the description given in the deed and run down main Benson creek as the description contained in the deed recited the line should run from the

elm tree standing on the bank of the main creek, the line runs north 34½ east 324 feet; thence north 1 east 931 feet to the hickory corner. There is no controversy in the evidence that the main channel of Benson creek is located on the ground as appellee's surveyor testified it is and as the map prepared by him filed herein represents it to be. It is certainly true that in conformity with the description contained in appellee's deed and in all the deeds constituting the chain of title under which he claims, the line must be run down and with main Benson creek; and, if to do so makes it necessary to discard the courses of the lines given in the title papers, that must be done.

The deed from W. A. Powers to Robert Anderson is the first of the deeds in appellant's chain of title to describe by metes and bounds the lands conveyed, and as that tract of land lay with reference to Benson creek the description is as follows: "Thence north 27 west 52 poles to the center of the creek and down the same north 71¼ east 50½ poles to a stone on main Benson creek; thence north 15½ east 78 poles to a hickory corner to Henry Smith." Appellant claims the lands in controversy by establishing that if the line which runs north 15½ east 78 poles to the hickory, Henry Smith's corner, should be reversed from that known and standing corner on Benson creek it would include within the boundary of that tract of land the islands in controversy. It will be observed, however, that the course and distance of the line in appellant's deed which approaches the known hickory corner by running north 15½ east 78 poles is exactly the same course and distance given for the line approaching that corner as described in the deeds from Elisha Herndon to R. E. Collins, R. E. Collins to J. H. Shouse, and J. H. Shouse to Solomon Bright under which appellee claims the lands in controversy. Reference to the last three named deeds discloses that while the course of the line fixed it north 15½ east and the distance 78 poles, in those three deeds the line is further described as running with main Benson creek or down the same. Where the course and distance of a line from one point to another on a stream are given and the line is said to run with the stream, the course and distance given are valuable as aids in locating not the line itself but the corner from which and that to which the line runs, the stream, the natural object, locates the line.

W. A. Powers and Robert Anderson divided the lands conveyed to them. The portion adjoining the lands now owned by appellee fell to Anderson, and the deed made to him for the first time in that chain of title describes the tract of land by metes and bounds. A comparison of the calls will disclose that the deed from Powers to Anderson, in describing the tract of land as it lay along Benson creek, gives the same course and distance for the line as the deed from Elisha Herndon to Robert Collins, and Robert Collins to J. H. Shouse and J H. Shouse to Solomon Bright; that is, north 15½ east 78 poles to a hickory, corner to Henry Smith. In other words, when the tract of land described by the various deeds constituting appellant's chain of title was first described by metes and bounds the description of the line running down Benson creek to the hickory corner as described in the deed from Powers to Anderson was merely an adoption of the same call from the deeds constituting appellee's chain of title. All the deeds constituting appellee's chain of title recite that the line runs with main Benson creek, the course and distances fixing the direction from and distance between the various corners on the creek. It is apparent then that in the light of those facts the difference between the parties to this litigation disappears. As appellant's tract of land was conveyed to him, the boundary as described ran "north 27 west 52 poles to the center of the creek and down the same north 71¼ east 50½ poles to a stone on main Benson creek; thence north 15½ east 78 poles to a hickory, corner to Henry Smith; thence south 2½ east 63 poles to a stone at the edge of said creek." The call "north 15½ east 78 poles to a hickory, corner to Henry Smith" being exactly the same as that contained in the first three deeds of appellee's chain of title, except that as given in the latter deeds, that line is recited to run down or with the main creek; considering those facts, it becomes apparent that as described in appellant's deed the line after running north 27 west 52 poles to the center of the creek, thence from corner to corner on the creek runs "down the same," that the description "down the same" as contained in the portion of the boundary quoted above has reference to and qualifies all the calls from corner to corner on the creek, as appellant's tract of land is described.

It is perfectly obvious from a consideration of all the title papers constituting the chain of title of both

appellant and appellee that the line dividing the two tracts of land runs with main Benson creek. The record leaves us in no doubt on that question. The evidence without contradiction establishes that main Benson creek is so located that if it be the dividing line between the lands of appellant and appellee the islands in controversy are within appellee's boundary and are excluded from that of appellant. The chancellor so found and adjudged, and his judgment is wholly in accord with the opinion of this court.

Wherefore, the judgment herein is affirmed.